UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE SADOWSKI,

      Plaintiff,                      Civil Action No. 06-11577

v.                                 HON. ARTHUR J. TARNOW
                                 U.S. District Judge
                                 HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

     Plaintiff Christine Sadowski brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further fact-finding and consideration pursuant to Section **A**. of the analysis.

## PROCEDURAL HISTORY

     On June 27, 2003,  Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging an onset date of July 1, 2002 (Tr. 45-47, 198-201).  After the Social Security Administration (SSA) denied her benefits on

November 7, 2003, she made a timely request for an administrative hearing, held on June 9, 2005 in Birch Run, Michigan (Tr. 25, 336).   Administrative Law Judge (ALJ) Bernard Trombly presided (Tr. 338).  Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 340-348).  On July 25, 2005, ALJ Trombly found that pursuant to Medical-Vocational Rule 201.28, Plaintiff retained the ability to perform a full range of sedentary work (Tr. 23).  On March 17, 2006 the Appeals Council denied review (Tr. 4-6).  Plaintiff filed for judicial review of the final decision on April 3, 2006.

## BACKGROUND FACTS

Plaintiff, born January 31, 1960 was age 45 when the ALJ issued his decision (Tr. 16, 45).  She completed high school and worked previously as a cook and a dietary aide (Tr.16, 67, 95).  Plaintiff alleges disability as a result of  Carpal Tunnel Syndrome ("CTS") and degenerative disease of the lumbar spine (Tr. 18).

### A.    Plaintiff's Testimony

Plaintiff, divorced, testified that her children live with their father (Tr. 341).  She alleged that hand pain and numbness as a result of CTS had prevented her from working for the past two years (Tr. 341).  She reported that before ceasing work two years prior to the hearing she had worked as a cook in a nursing home, adding that prior to working as a cook, she had been employed as a dietary aide (Tr. 341).

Plaintiff reported that CTS obliged her to undergo surgery on both wrists approximately 20 years before, stating that her condition was "okay" until 2002 when she again experienced hand and wrist pain (Tr. 341-342).   She opined that she would be unable

-2-

to perform a job with even minimal lifting requirements, alleging that her continuous wrist and hand pain was exacerbated by any movement (Tr. 342).

Plaintiff indicated that in addition to CTS, she experienced lower limb neuropathy as a result of diabetes, stating that she took Neurotin (Tr. 343).  She reported that back pain, in addition to leg numbness, created mobility problems (Tr. 346).   In response to questioning by her attorney, Plaintiff estimated that her condition obliged her to take two naps each day between the hours of  8:00 a.m. and 5:30 p.m. (Tr. 347).

### B.    Medical Evidence

### i.  Treating Sources

In January, 2002, Plaintiff sought treatment for chronic sinus problems (Tr. 98). March, 2002 treating notes indicate that Plaintiff requested an increased dose of Zoloft for depression (Tr. 99).  Sonya Cribbs, P.A.,  recommended that Plaintiff and her husband seek counseling (Tr. 99).  The same month, Plaintiff reported elevated blood pressure (Tr. 100). In April, 2002, Plaintiff sought emergency treatment for chest discomfort, undergoing testing with negative results (Tr. 119).  Plaintiff was advised to continue Xanax (Tr. 119). Psychological  records from the same month show that Plaintiff sought counseling for depression (Tr. 132).  May, 2002 treating notes by Cribbs indicate that Plaintiff complained of pain "between shoulder blades" as a result of a 2000 car accident (Tr. 105).  Plaintiff reported that shoulder and back pain created difficulty lifting pots and pans at work (Tr. 105). The same month, Cribbs denied Plaintiff's request for work restrictions (Tr. 106).  In July, 2002 Cribbs prescribed wrist splints in response to Plaintiff complaints of hand numbness

radiating into her upper arms (Tr. 109).

Notes from a November, 2002 exam indicate that Plaintiff continued to use Zoloft (Tr. 112). Counseling records created the same month indicate that Plaintiff kept only two appointments, stating that "[b]esides venting, minimal progress made" (Tr. 133). Plaintiff received a GAF of 55 with a prognosis of "fair"[1] (Tr. 133). Examination notes by Jeffrey R. Levin, M.D., also created in November, 2003, indicate that Plaintiff experienced "mild weakness of wrist extension in the right hand," finding that Plaintiff "should be wearing wrist splints" (Tr. 135). An EMG performed the same month showed "right cubital tunnel syndrom and C7 radiculopathy" (Tr. 136). In December, 2002, Cribbs wrote a one-month work release after Plaintiff complained of right neck and upper extremity pain (Tr. 114). In February, 2003 Dr. Levin prescribed hand splints for daytime use, avoidance of vibratory tools, and a weight restriction of "five to ten pounds repetitively" (Tr. 136).

Exam records from May, 2003 note a history of hypertension and "carpal tunnel surgery 15 years ago" (Tr. 139). Plaintiff reported ongoing anxiety attacks characterized by shortness of breath and palpitations (Tr. 140). By the end of May, 2003, Plaintiff reported an improvement in symptoms (Tr. 141). In July, 2003, Plaintiff sought emergency treatment for elevated sugar levels (Tr. 145). Treating notes from August, 2003 indicate that Plaintiff "[m]ost likely had an occurrence of carpal tunnel syndrome interfering with her activities of

---

[1]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 30 (4th ed.2000).

daily living" (Tr. 156).  Later the same month, Debasish Mridha, M.D. found "electro diagnostic evidence of mild right carpal tunnel syndrome" (Tr. 158).  In September, 2003, Plaintiff complained of back, leg, arm, and neck pain (Tr. 103).  Dr. Mridha recommended continued pain management (Tr. 163).  In December, 2003, Plaintiff reported depression as a result of divorce, and "multiple pain syndrome" claiming that pain medication was ineffective (Tr. 164).  She admitting obtaining good results from some OxyContin that a friend had given her (Tr. 164).  January, 2004 needle electromyography studies of both lower extremities yielded normal results (Tr. 166).

### ii. Consultive Sources

A Residual Functional Capacity Assessment performed in October, 2003 found that Plaintiff retained the ability to lift twenty pounds occasionally and 10 pounds frequently; the ability to stand, sit, or walk for six hours in an eight-hour workday; and a capacity for pushing and pulling marked by upper extremity limitations (Tr. 173).  The report found further that Plaintiff's non-exertional limitations precluded her from more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 174).  Plaintiff was deemed capable of only frequent (as opposed to constant) handling, fingering, or feeling, but did not experience visual or communicative limitations (Tr. 175-176).  Finally, the report, alluding to Plaintiff allegations of CTS, found that she should avoid concentrated exposure to vibration and heights (Tr. 176).

A Psychiatric Review Technique performed the following month noted that Plaintiff experienced depression and anxiety (Tr. 184-186).  The report found that Plaintiff

experienced only mild restrictions of daily living and difficulties in maintaining social functioning or in maintaining concentration, persistence, or pace (Tr. 191) The report concluded that since Plaintiff had omitted any mention of depression in her activities of daily living ("ADLs") that her allegations of a mental disorder were only partially credible. (Tr. 195).

### iii.  Records Submitted After the Administrative Decision[2]

In June, September, and December, 2003, and March, 2004, Plaintiff sought emergency treatment for various ailments including sinus drainage, earache, and sore throat (Tr. 238-282).   On March 28, 2004, Plaintiff again requested emergency treatment for back spasms (Tr. 220).   Treating staff, releasing Plaintiff the same day, prescribed Vicodin, Flexeril, and Prednisone (Tr. 233).   In June, 2004, Plaintiff sought emergency treatment for allergies (Tr. 305).   The late-submitted medical records also show that Plaintiff received treatment for sinus pressure and allergies from September, 2004 to August, 2005  (Tr. 303-312).

Neurologist Gavin Awerbuch, M.D. treated Plaintiff from September, 2004 through May, 2005 (Tr. 318-324).   Awerbuch reported that Plaintiff complained of continued symptoms of CTS, although her condition had improved since ceasing work (Tr. 318).

---

[2]

As discussed more fully, *infra*, pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), the Court may consider the evidence submitted subsequent to the administrative decision only for purpose of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Awerbuch renewed Plaintiff's prescription for Vicodin and advised her to use carpal tunnel splints "symptomatically" (Tr. 319).  Normal awake and sleep EEG studies showed negative results (Tr. 322).  In November, 2004, Awerbuch identified 12 tender trigger points in Plaintiff's neck, shoulders, lower back, hips, elbows, and knees characteristic of fibromyalgia (Tr. 323).  Needle conduction studies performed the same month showed the presence of L5 radiculopahy, but no evidence of diabetic polyneuropathy (Tr. 324).

### C.    Vocational Expert Testimony

The administrative hearing did not include vocational expert testimony.

### D.    The ALJ's Decision

Citing Plaintiff's medical records, ALJ Tremby found the severe impairments of "diabetes mellitus, history of carpal tunnel syndrome, obesity, and mild degenerative disc disease of the lumbar spine and cervical spine" (Tr. 22).  He determined that although Plaintiff had  severe impairments, they neither met nor equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4 and No. 16 (Tr. 22).

The ALJ concluded that Plaintiff was unable to perform her past relevant work "either as actually done or as generally done in the national economy"[3] (Tr. 22).  However, based on Plaintiff's age, education, and work experience, he found that she  retained the residual functional capacity to perform the full range of sedentary work pursuant to the

---

[3]Paragraph 7 of the ALJ's findings states incorrectly that his finding that Plaintiff was unable to perform her past work was "supported by the testimony of a vocational expert" (Tr. 22).  As noted above, the administrative record indicates that the ALJ did *not* consult a vocational expert ("VE") at the hearing (Tr. 336).

Medical-Vocational Guidelines (Tr. 22-23).  The ALJ deemed Plaintiff's allegations of disability "not fully credible," noting that objective medical tests did not bear out her professed degree of limitation (Tr. 19-20).  The ALJ also noted that although Plaintiff claimed disability as of July, 2002, she continued to work for at least another six months with restrictions (Tr. 19).  The ALJ stated that Plaintiff's admitted activities such as laundry, light household chores, and driving, along with the absence of muscle atrophy, supported his rejection of her allegations of disability (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

-8-

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Medical-Vocational Rules

Plaintiff argues that the ALJ erroneously relied on the Appendix 2 of the Medical-Vocational Rules rather than vocational expert testimony to deny her benefits at Step Five of his analysis. *Brief* at 6.  She submits that the Residual Functional Assessment by the state-

hired physician, along with treating physicians' reports, show the existence of non-exertional limitations, rendering the ALJ's failure to consult a VE reversible error.[4]  *Id.*

At Step Five of the administrative analysis, the burden of proof shifts to the Commissioner to establish that the claimant retains the residual functional capacity to perform specific jobs existing in the national economy. *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).  "In many cases, the Commissioner may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of 'disabled' or 'not disabled' based on the claimant's age and education and on whether the claimant has transferable work skills."  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).  While "in the case of a non-exertional impairment, the grids may be used to direct a conclusion if the claimant's non-exertional impairments do not significantly reduce the underlying job base . . . the ALJ must back such a finding of negligible effect with the evidence to substantiate it." *Lopez v. Barnhart* 78 Fed.Appx. 675, 679, 2003 WL 22351956, *4 (10th Cir. 2003)(internal citations omitted).  Pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e) and SSR 85-15,  if a nonexertional limitation substantially limits a claimant's ability to perform other work, reliance on the grids is improper.   "[W]here a nonexertional limitation might substantially

---

[4]20 C.F.R. § 404.1569a(c)(v),(vi), listing the "non-exertional" limitations, includes environmental limitations as well as "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."

reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ *must* consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (emphasis added); *see also Wilson, supra*, at 548.

The ALJ's conclusion that Plaintiff experiences only minimal non-exertional limitations stands unsupported by record evidence. First, not one of Plaintiff's care-givers found a complete absence of non-exertional limitations. While her treating sources did not divide Plaintiff's limitations expressly into "non-substantial" or "substantial," categories, the fact that her limitations were substantial or significant can be inferred from the fact that her providers prescribed work restrictions, wrist splints, and pain medication (Tr. 109, 114, 135, 136, 163). Even more notably, the Residual Functional Capacity Assessment completed in October, 2003 states that Plaintiff experienced non-exertional impairments limiting her to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 174). The non-exertional portion of the assessment found additionally that Plaintiff was incapable of constant handling, fingering, or feeling and should avoid concentrated exposure to vibration (Tr. 176).

In addition, although the ALJ deemed Plaintiff's non-exertional limitations insubstantial to the extent that he did not consult a VE, he implicitly acknowledged that CTS created more than minimal work-related limitations by including it among Plaintiff's Step Two impairments. *Farris v. Secretary of HHS* , 773 F.2d 85, 90 (6th Cir. 1985). While Plaintiff's back problems might arguably limit only Plaintiff's *exertional* limitations (which the ALJ seemed to acknowledge in his finding that Plaintiff was limited to exertionally

-11-

sedentary work) CTS, which affects finger, hand, wrist, and elbow functions, clearly implicates *non-exertional* as well as exertional abilities.

The ALJ's failure to consult a VE mandates remand for practical as well as legal reasons, since the absence of a hypothetical question and VE testimony leaves the reviewing court unable to determine how Plaintiff's non-exertional limitations would effect job availibility. *See Sanchez v. Barnhart*, 329 F.Supp.2d 445, 454 (S.D.N.Y.,2004) (Remanding for "further consideration and clarification," citing the need to " make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test."); *see also Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D.Tenn. 2004)(remanded for further fact-finding on the basis that "where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through [VE] testimony").

**B.  Sentence Six Remand**

In her argument for remand, Plaintiff's summary judgment motion cites medical records submitted to the Appeals Council subsequent the ALJ's July 23, 2005 decision (Tr. 23, 210-335).   This recommendation contains a discussion of those records, *supra* at 6-7. However, under *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision is subject to only a narrow review by this Court.  In *Cotton*, the court held that where the Appeals Council denies a claimant's

request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96.  Instead, sentence six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added).   Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Plaintiff does not request a "sentence six" remand for consideration of the post-decision evidence, although she cites the late-submitted material in support of remand for benefits.   A review of the newer records indicates that such a sentence six remand is not warranted even if the Court were inclined to do so *sua sponte*.  *See Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005)(sentence six remands can be granted *sua sponte*).

First, pursuant to *Cotton,* nothing in the record or Plaintiff's brief suggests "good cause" for this material's exclusion from the records presented to the ALJ.   Moreover, the late additions do not qualify as *new* - all of medical records in question were created before the July, 2005 administrative decision.    Finally and most obviously, the medical documentation in question is not  likely to result in different determination by the ALJ. Although Dr. Awerbuch, unlike other care providers, opined that Plaintiff might experience

fibromyalgia, he does not allege a greater degree of limitation than other treaters.  The remainder of Dr. Awerbuch's treating records reiterates other portions of Plaintiff's medical file and can be deemed immaterial to the ALJ's decision.

In closing, I note that although Plaintiff requests remand for an award of benefits as well as for further fact-finding, the errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits.  Indeed, upon considering the VE's testimony, the ALJ may very well find that substantial evidence supports a non-disability finding.   Thus,  I find that pursuant to *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) this case should be remanded for further proceedings consistent with Section **A**. of the analysis.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, to the extent that the Court remands this case for further fact-finding pursuant to Section **A**. of the above analysis.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947

(6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE


Dated: March 30, 2007


                        CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 30, 2007.


                                        s/Susan Jefferson

Case Manager